UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAVON TYVELL BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00673-TWP-MPB |
| | ) |
| DAVID LIEBEL, and | ) |
| INDIANA DEPT OF CORRECTION, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION TO AMEND, SCREENING SECOND AMENDED COMPLAINT, DENYING MOTION FOR PRELIMINARY INJUNCTION, AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on Plaintiff Shavon Tyvell Boyd's ("Mr. Boyd") *pro se* motion requesting Leave to Amend Complaint, (Dkt. 24), and his Motions for Emergency Preliminary Injunction (Dkts. 7, 10, 11, 27). Mr. Boyd is an inmate currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He initiated this action alleging violations of his constitutional rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* The motion for leave to amend his complaint, Dkt. 24, is **granted**. Because Mr. Boyd is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his Amended Complaint, (Dkt. 24-1), before service on the Defendants. For the reasons stated below the request for injunctive relief is **denied**.

### I. SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915A(b), a court must dismiss an amended complaint, or any portion of the amended complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether an amended complaint states a claim, the court applies the same standard as when addressing a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## II. THE AMENDED COMPLAINT

In his Amended Complaint, Mr. Boyd names three defendants: (1) David Liebel ("Mr. Liebel"), Director of Religious Services for the Indiana Department of Correction ("IDOC"), in his individual and official capacities; (2) Robert Carter, Commissioner of the IDOC, in his official capacity ("Commissioner Carter"); and (3) Ms. Milburn, supervisor for Aramark Food Service at Plainfield Correctional Facility ("Plainfield"), in her individual capacity. His claims relate to three separate series of events, each of which is discussed below.

### A.   Delay in Approving Request for Kosher Diet

Mr. Boyd describes himself as a practicing Black Jew. His religion requires him to consume a kosher diet that contains meat. He entered the IDOC on January 6, 2022. On January 8, 2022, Mr. Boyd sent a request for a kosher diet. As of January 26, 2022, he had not received a kosher diet, but a chaplain provided him with an application. Mr. Boyd completed the application, indicating that he was requesting a "traditional" kosher diet because he was Jewish.

As of February 11, 2022, Mr. Boyd still had not received a kosher diet. On that date, he was transferred to Plainfield. Once he arrived at Plainfield, he again requested a kosher diet through the Plainfield chaplain. The chaplain said that Mr. Liebel would not approve Mr. Boyd's

kosher diet until the week after Passover (which started on April 16, 2022), apparently because Mr. Boyd's January 26, 2022 religious diet application was filed after the deadline for requesting a special Passover diet. In this same time frame, Mr. Liebel also emailed Mr. Boyd's caseworker and stated that Mr. Boyd would not receive a kosher diet until the week after Passover. Mr. Boyd contends that Mr. Liebel's purpose was to delay and prevent his ability to practice his religion, to prevent him from observing Passover, and to save the additional costs associated with ordering additional Passover meals. Mr. Liebel and the IDOC knew or should have known that Jewish inmates would enter the IDOC after the deadline for ordering Passover meals and should have taken steps to order additional meals for such inmates.

On April 8 and 11, 2022, Mr. Boyd filed Motions for Emergency Injunction, (Dkts. 7, 10, 11), in this Court, seeking an order requiring the IDOC to provide him with appropriate meals for Passover. The IDOC responded by providing a declaration from Mr. Liebel in which he testified that Mr. Boyd was now scheduled to receive a kosher diet and Passover meals so that he could fully observe Passover, (Dkt. 15-1). On April 14, 2022, the Plainfield chaplain brought Mr. Boyd a kosher diet card, and he finally began receiving kosher meals— 96 days after Mr. Boyd had informed the IDOC of his need for a kosher diet containing meat.

Previously, in another lawsuit, the IDOC entered into a settlement agreement requiring it to approve or deny kosher diet applications within 60 days. Under that agreement, if an application could not be resolved in 60 days, the IDOC was required to immediately provide a kosher diet to the applicant until review of the application was completed. Mr. Boyd alleges that the IDOC took longer than 60 days to approve his request for a kosher diet and did not provide him with a kosher diet pending the review of his application as required by the settlement agreement.

3

The IDOC Commissioner has implemented Policy 01-03101, which states, in part, that the IDOC will monitor the applicant's commissary purchases for 60 days to determine the sincerity of the professed religious belief of an applicant who applies for a religious diet, even though the IDOC is aware that this Court and others have held that commissary purchases alone do not negate an inmate's professed sincerely held religious belief. The IDOC also does not take into consideration that many applicants are indigent and cannot afford to supplement their diet with commissary purchases during the 60 days they must wait for approval of the religious diets they have requested.  Mr. Boyd alleges that the IDOC uses this policy as a delaying tactic to withhold religious diets for those with sincerely held religious beliefs, especially Black inmates.  This policy also sets up a no-win situation for applicants like Mr. Boyd:  the IDOC refuses to serve them kosher food for 60 days or more but then may deny their request for kosher food if they order non-kosher food during that time.  Moreover, in implementing Policy 01-03-101, Mr. Liebel favors European or "white" Jews who apply for a kosher diet and approves their requests for kosher diets within 30 days, which is well under the 60 or more days that Black or African-heritage Jews must wait.

Because of the delay in approving Mr. Boyd's kosher diet, Mr. Boyd was forced to violate his sincerely held religious beliefs.  He essentially had two choices: (1) go days without eating so that he could be ritually clean, which is a requirement for him to pray; or (2) eat non-kosher foods and be unable to pray.  At times, Mr. Boyd chose the first course.  As a result, he experienced headaches, stomach pains, dizziness, heart issues, and significant weight loss.

**B.      Failure to Provide Appropriate Meals During Passover at Plainfield**

As stated above, Mr. Boyd finally received his kosher diet card on April 14, 2022. Plainfield does not have a kosher kitchen, so kosher meals are provided as pre-packaged kosher

trays. The majority of those trays include kosher meat, which would satisfy Mr. Boyd's sincerely held religious beliefs.

On April 16, 2022, Passover started at sunset. Mr. Boyd went to retrieve his kosher meal, but Ms. Milburn refused to provide him with a kosher meal, stating that she had called the IDOC Central Office and spoke to Mr. Liebel about providing Mr. Boyd with a kosher tray. Ms. Milburn told Mr. Boyd that Mr. Liebel said, "F*** Boyd," so Mr. Boyd was denied the ability to eat.

On April 18, 2022, Mr. Boyd went to the kitchen to retrieve his Passover meal. Upon inspection, he realized that his meal was a regular kosher meal, not a Passover meal, which must be free of foods containing leaven. Mr. Boyd informed Ms. Milburn about the issue, and she said that Mr. Boyd should be lucky to eat at all and that Central Office did not like him. She did, however, give him a Passover meal.

On multiple occasions, Ms. Milburn acted deliberately with an intent to interfere with Mr. Boyd's sincerely held religious beliefs. On April 19, 2022, Mr. Boyd received two meals that were not appropriate for Passover. He spoke to Ms. Milburn, and she said she would not change the meal because Mr. Liebel said that there were not enough Passover meals to go around, so Mr. Boyd would just have to deal with it. On April 20, 2022, Mr. Boyd again received two meals that were not Passover-compliant, and Ms. Milburn denied him replacement meals. On April 21, 2022, Mr. Boyd received one meal that was not Passover-compliant. Ms. Milburn refused to provide him an appropriate replacement, stating that the inmate workers in the kitchen already ate all the meals, so Mr. Boyd would have to take a regular kosher meal or not eat. As a result of being denied appropriate meals, Mr. Boyd suffered stomach pains, hunger pains, nausea, fatigue, and dizziness.

### C. Failure to Provide Meat as Part of Kosher Diet at Wabash Valley

Mr. Boyd was transferred to Wabash Valley on May 13, 2022. Wabash Valley has a kosher kitchen, but it does not serve kosher meats. Instead, it serves kosher meals that do not include meat. The meals do include eggs, but Mr. Boyd does not consider eggs to be meat for the purpose of satisfying his sincerely held religious belief that he must consume kosher meat with at least one meal per day. Thus, he is still not being provided with a diet that conforms to his sincerely held religious beliefs.

### D. Relief Requested

Mr. Boyd seeks damages and declaratory relief from all the Defendants. He does not specify the nature of the declaratory relief he seeks. As to Mr. Liebel and Commissioner Carter, he also seeks permanent injunctive relief. Specifically, he requests an injunction requiring Mr. Liebel to: (1) provide Mr. Boyd with a kosher diet containing kosher meats; and (2) equally apply all policies about religious diets regardless of religion, color, or creed. He also requests an injunction prohibiting Commissioner Carter from enforcing Policy 01-03-101, which requires that inmates wait 60 days to receive approval of a religious diet.

### III. DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the Amended Complaint, certain claims are dismissed while other claims shall proceed as submitted.

### A. Individual Capacity RLUIPA Claims

Mr. Boyd seeks monetary damages from Mr. Liebel and Ms. Milburn in their official capacities based on his allegations that they violated RLUIPA. However, RLUIPA does not authorize any kind of relief against public employees in their individual capacities, nor does it apply to individuals like Ms. Milburn, who is an Aramark employee, who do not personally

receive federal funds.  *Nelson v. Miller,* 570 F.3d 868, 889 (7th Cir. 2009), *abrogation on other grounds recognized by Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019); *see also Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).  Accordingly, Mr. Boyd's RLUIPA claims against Mr. Liebel and Ms. Milburn in their individual capacities are **dismissed** for failure to state a claim upon which relief can be granted.

### B.  Official-Capacity Claims for Monetary Damages

Mr. Boyd seeks monetary damages from both Commissioner Carter and Mr. Liebel in their official capacities based on his allegations that his rights have been violated under the First Amendment, the Fourteenth Amendment, and RLUIPA.  Such claims are actually claims against the IDOC.  But Mr. Boyd cannot obtain monetary damages from the IDOC under either § 1983 or RLUIPA.  *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (§ 1983); *Sossamon v. Texas*, 563 U.S. 277, 285–86 (RLUIPA). Accordingly, his claims for monetary damages against Commissioner Carter and Mr. Liebel in their official capacities are **dismissed** for failure to state a claim upon which relief can be granted.

### C.  Delay in Approval of Kosher Diet

#### 1.  Individual-Capacity § 1983 Claims Against Mr. Liebel

Mr. Boyd contends that Mr. Liebel violated the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment when he delayed his approval of Mr. Boyd's request for a kosher diet.  Mr. Boyd has adequately stated claims against Mr. Liebel in his individual capacity under 42 U.S.C. § 1983 for violations of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment in connection with the delay in providing Mr. Boyd with a kosher diet, and those claims **will proceed**.

7

### 2. Official-Capacity Claims Against Commissioner Carter and Mr. Liebel for Injunctive Relief

Mr. Boyd cannot obtain monetary damages from Commissioner Carter and Mr. Liebel in their official capacities under § 1983 or RLUIPA. He can, however, seek injunctive relief under both statutes. He asks the Court to enjoin Commissioner Carter from enforcing Policy 01-03-101 and to require Mr. Liebel to apply all policies related to religious diets without regard to color, religion, or creed. These requests relate to his allegations that approval of his request for a kosher diet was unjustifiably delayed because of Policy 01- 03-101 and Mr. Liebel's uneven application of that policy. As Mr. Boyd's Amended Complaint makes clear, however, he has been approved for and is receiving a kosher diet, albeit not one that satisfies his sincerely held religious beliefs. "A court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882–83 (7th Cir. 2009). In this case, Mr. Boyd has been given a kosher diet, and there is no "cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). As a result, there is currently no live case or controversy between the parties as to the terms or application of Policy 01-03-101, so his request for an injunction prohibiting Commissioner Carter from applying Policy 01-03-101 and requiring Mr. Liebel to apply the policy evenly is **moot**. Thus, these claims for injunctive relief against Commissioner Carter and Mr. Liebel in their official capacities are **dismissed** for lack of subject-matter jurisdiction**.**

### D. Failure to Provide Passover-Compliant Meals

#### 1. Ms. Milburn

Mr. Boyd contends that Ms. Milburn violated the First Amendment when she failed to provide him with Passover-compliant meals. His Amended Complaint adequately states a claim against Ms. Milburn for violating the First Amendment, and that claim **will proceed**.

8

### 2. Individual-Capacity Claims Against Mr. Liebel

Mr. Boyd alleges that Mr. Liebel violated the First Amendment when he directed Ms. Milburn not to provide Mr. Boyd with Passover-compliant meals and failed to provide for an adequate number of Passover-compliant meals. Mr. Boyd has adequately stated a claim under the First Amendment against Mr. Liebel in his individual capacity, and that claim **shall proceed**.

### E. Failure to Provide Kosher Meat at Wabash Valley

As explained above, Mr. Boyd alleges that, since his transfer to Wabash Valley, he has been provided with kosher meals, but none of them include kosher meat, which violates his sincerely held religious belief that he must eat kosher meat at least once a day. He alleges that the failure to provide him with such meals amounts to a violation of the First Amendment and RLUIPA. He seeks to hold Mr. Liebel individually liable for the failure to provide him with kosher meat, and he also seeks an injunction requiring Mr. Liebel to provide him with kosher meals that include meat.

As to Mr. Boyd's First Amendment claims against Mr. Liebel in his individual capacity, "[l]iability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). The only allegation about Mr. Liebel's involvement with the kosher meals at Plainfield is a conclusory allegation that Mr. Liebel's "continued denial of Boyd's kosher diet containing one meal a day containing kosher meat is a violation of Boyd's sincerely held religious belief in violation of RLUIPA, First Amendment of the US Constitution." (Dkt. 24-1 at 11.) The Court is not required to accept such conclusory allegations when screening a complaint. *See Hanks v. Hubbard*, No. 21-2504, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022) (affirming dismissal of First Amendment retaliation claim at screening

9

where the complaint included only conclusory allegations of retaliation). And, when stripped of this conclusory allegation, Mr. Boyd's Amended Complaint does not include any factual allegations plausibly suggesting that Mr. Liebel had any personal involvement with Wabash Valley's decision to provide meat-free kosher meals. Instead, the Amended Complaint states only that "Wabash Correctional Facility has a kosher kitchen, but does not serve kosher meats." (Dkt. 24-1 at 10.) Thus, Mr. Boyd's First Amendment claims against Mr. Liebel in his individual capacity based on the failure to provide kosher meat at Wabash Valley are **dismissed** for failure to state a claim upon which relief can be granted.

That leaves Mr. Boyd's request for an injunction requiring Mr. Liebel, in his official capacity, to provide Mr. Boyd with kosher meals that include meat at least once a day. Injunctive relief is potentially available to Mr. Boyd under both § 1983 and RLUIPA. To state a claim under the First Amendment or RLUIPA, Mr. Boyd must allege that the defendant's actions imposed a substantial burden on his ability to exercise his religion. *Nelly-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (cleaned up) (First Amendment); *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009) (RLUIPA). Mr. Boyd has adequately alleged that his ability to exercise his religion has been substantially burdened, but he has not adequately alleged that the burden is traceable to Mr. Liebel or anyone at the IDOC, as opposed to, for example, a private vendor running the food service at Wabash Valley. *See* 42 U.S.C. § 2000cc-1(a) (RLUIPA) ("[n]o *government* shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." (emphasis added)); *see also Ex Parte Young*, 209 U.S. 123, 157 (1908)

10

("In making an officer of the state a part defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . . . "). Mr. Boyd alleges only that Wabash Valley's kitchen does not serve kosher meats. As currently formulated, these allegations are too sparse to support a claim for injunctive relief against Mr. Liebel in his official capacity. Accordingly, Mr. Boyd's claims for injunctive relief with respect to the lack of kosher meat at Wabash Valley are **dismissed** for failure to state a claim upon which relief can be granted.

If Mr. Boyd wishes to pursue claims based on the lack of kosher meat at Wabash Valley, he may pursue them by filing a new lawsuit after exhausting the IDOC's grievance process.

**F.    Summary**

In summary, the following claims **shall proceed**:

- Individual capacity claims for monetary damages against Mr. Liebel based on allegations that he violated the First Amendment and the Fourteenth Amendment when he delayed his approval of Mr. Boyd's request for a kosher diet;

- Individual capacity claims for monetary damages against Mr. Liebel based on allegations that he violated the First Amendment when he directed that Mr. Boyd not receive Passover-compliant meals and failed to assure that an adequate number of Passover-compliant meals were available in 2022; and

- Individual capacity claims for monetary damages against Ms. Milburn based on allegations that she violated the First Amendment when she refused to provide Mr. Boyd with Passover-compliant meals in 2022.

All other claims have been **dismissed** for the reasons stated above. This summary of claims includes all of the viable claims identified by the Court. If Mr. Boyd believes that additional claims

were alleged in the Amended Complaint, but not identified by the Court, he shall have **through Wednesday, July 6, 2022,** by which to identify those claims.

The **Clerk is directed** to terminate the Indiana Department of Correction as a defendant on the docket and to add Ms. Milburn as a defendant on the docket.

### IV.    MOTION FOR PRELIMINARY INJUNCTION

Mr. Boyd has filed a motion seeking an emergency preliminary injunction requiring Mr. Liebel to provide him with a kosher diet that includes kosher meat at least once per day. (Dkt. 27.)

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020).

The Court will not, however, address the three threshold elements because, as a preliminary matter, a request for injunctive relief must necessarily be tied to the specific claims on which the plaintiff is proceeding. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (cleaned up)); *see also DeBeers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

As explained above, Mr. Boyd is currently being allowed to proceed on claims related to the delay in approving his request for kosher meals and the failure to provide him with Passover-compliant meals in 2022. He is not currently permitted to proceed on claims related to the failure

to include meat in the kosher meals that he is receiving. Accordingly, this Court lacks authority to grant the relief requested, and the Motion must be **denied without prejudice**. *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying claims and request for injunctive relief, district court has no authority to grant injunctive relief). As stated above, if Mr. Boyd wishes to pursue these claims, he may do so by filing a new lawsuit after exhausting any applicable administrative remedies. If he files such a lawsuit, he may file a motion for preliminary injunction in that case, if appropriate.

### V. CONCLUSION AND SERVICE OF PROCESS

Mr. Boyd's Motion requesting Leave to Amend Complaint, Dkt. [24], is **GRANTED**. The **Clerk is directed** to docket Mr. Boyd's Amended Complaint, Dkt. 24-1, as a separate document. It will now become the controlling document in this case.

For the reasons stated above, Mr. Boyd's Motion for Emergency Preliminary Injunction, Dkt. [27], is **DENIED without prejudice**.

The **Clerk is directed**, pursuant to Federal Rule of Civil Procedure 4(c)(3), to issue process to Defendants David Liebel and Ms. Milburn in the manner specified by Rule 4(d). Process shall 51, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **Clerk is directed** to serve Mr. Liebel, who is an IDOC employee, electronically.

**SO ORDERED.**

Date: 6/9/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Shavon Tyvell Boyd, #129478
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Diana Lynn Moers
INDIANA ATTORNEY GENERAL'S OFFICE
diana.moers@atg.in.gov

Electronic service to Indiana Department of Correction:

David Liebel
c/o INDIANA DEPARTMENT OF CORRECTION CENTRAL OFFICE

Ms. Milburn, Aramark Employee
PLAINFIELD CORRECTIONAL FACILITY
727 Moon Road
Plainfield, Indiana  46168

Courtesy Copy to:

Christopher Cody
HUME SMITH GEDDES GREEN & SIMMONS, LLP
54 Monument Circle, Suite 400
Indianapolis, Indiana  46204